THE PEOPLE OF THE STATE OF NEW YORK EX REL. JAMES DUFFY, RESPONDENT, v. THE PRESIDENT AND TRUSTEES OF THE VILLAGE OF WEST TROY, APPELLANTS.

*Mandamus — party enjoined is excused from obeying it — A judgment enjoining the doing of an act — not vacated, on motion, in a collateral proceeding — Chamberlain of a village, bound by a judgment enjoining the village.*

It is a sufficient excuse to the trustees of a municipal corporation, for disobedience of a writ of *mandamus*, that they have been enjoined by a judgment of the court, regularly entered in an action brought against them, from doing the very acts which, by the writ of *mandamus*, they are ordered to do.

A writ of *mandamus* should not be granted where there is doubt as to the rights of the claimant, as in such case he should be left to his common law remedy.

It is not proper for the court, on motion of a creditor of a municipal corporation (seeking a *mandamus* against its officers requiring them to pay his claim), to set aside and vacate an injunction contained in a judgment, regularly and without collusion obtained in an action (to which the creditor was not a party), against such officers forbidding them to pay such claim.

The chamberlain is but the agent or servant of a village, and a judgment which enjoins the doing of an act by the president and trustees of the village, is binding on the chamberlain, although he is not a party to the action or named in the judgment.

APPEAL from an order, made at the Albany Special Term, requiring the president and trustees of the village of West Troy to order, and the chamberlain to pay to James Duffy, a justice of the peace of the town of Watervliet, the sum of $104 for services rendered, or, in default, that an attachment issue, etc., and vacating and setting aside an injunction order and judgment, obtained by Morgan L. Taylor, restraining the said president, chamberlain and trustees from paying the said amount.

*John H. Gleason*, for the appellants.

*J. H. Clute*, for the respondent.

LEARNED, P. J.:

A peremptory *mandamus* was issued by the Special Term requiring the president and trustees of West Troy to order the chamberlain to pay certain moneys to Duffy, and requiring John Hart, the chamberlain, to pay the same. On the return thereto it appeared that they had not obeyed. Thereupon, an order was made to the same effect, and, in default of their so doing, it was ordered that an attachment issue.

In the same order there was a further provision reciting that notice had been given to one Morgan L. Taylor, who, it was claimed, had obtained an injunction against the president and trustees, forbidding their paying this money to Duffy, and that Morgan L. Taylor had appeared, and thereupon it was ordered that the injunction obtained by Morgan L. Taylor be set aside.

From this order the present appeal is taken. On the papers returned it appears that Taylor commenced an action against the trustees of West Troy, to restrain their payment of this money to

Duffy, that the action proceeded to judgment, and that at a Special Term, held in October, 1879, a final judgment was granted, perpetually restraining the trustees of West Troy from paying this money to Duffy.   It further appears that, at a Special Term held in July, 1880, on notice to the plaintiff Taylor, the defendants in that action, viz., the Trustees of West Troy, moved to vacate that judgment, and that the motion was denied.

Thus there was not only a final judgment for a perpetual injunction in favor of Taylor against the Trustees of West Troy, but there was the refusal of the court to vacate that judgment on the application of those defendants.   That refusal appears to have been acquiesced in, and remains conclusive between the parties.

It was, therefore, not within the proper duty of the court, on a proceeding by Duffy to obtain a *mandamus*, to give Taylor notice, and thereupon to vacate a regular judgment which he had obtained against the trustees of West Troy.   Judgments are not to be attacked in this collateral manner, especially when the question of vacating the judgment has previously been decided unfavorably upon an application by the defendants themselves.

So far as the order appealed from vacates the Taylor judgment, we think it was erroneous.

The question then arises, did the judgment of perpetual injunction operate as an excuse to the trustees for not obeying the *mandamus*.   In the first place, it does not appear that that judgment was obtained by any collusion.   The plaintiff in that suit, claiming to be a taxpayer of West Troy and freeholder, alleged that this claim of Duffy's was illegal, and that the trustees were about to pay it, and, on that ground, asked for a perpetual injunction.   Now, it is very possible that the trustees might, by proper pleading, have insisted that Duffy was a proper and necessary party, and perhaps they ought to have done so.   But their neglect to do this does not show collusion.   We must, therefore, consider that the judgment was recovered in good faith.

Next, it is true that the judgment is not conclusive upon Duffy. He is not prevented thereby from suing the village of West Troy on his claim, and the judgment will not bar such an action.

But the question here is, whether the trustees could obey the *mandamus* when the same court had forbidden them to do the very

act which the *mandamus* required. It seems to us that this judgment excused them.

A writ of *mandamus* is not to be granted when there is doubt. Then the claimant must be left to his common law remedy. (See Charter West Troy, 1879, chap. 52, § 32.) And when it has been granted, if the persons to whom it is directed have a good excuse for not obeying it, they should not be punished for disobedience.

But still another question remains. The *mandamus* was directed not only to the trustees but also to the chamberlain of West Troy, and it directed him to pay this money to Duffy. It does not appear that there had been granted any injunction against the chamberlain forbidding him from paying. The *mandamus*, so far as can be discovered from the papers, was granted upon notice to Hart, the chamberlain, and no appeal has been taken from the order granting the *mandamus*.

The present appeal is from the order made on the return to the *mandamus*, although no actual return appears on the papers, and the only question, therefore, is whether the parties to whom the *mandamus* was directed have excused themselves for their disobedience. So far as we can discover, the chamberlain makes no excuse.

It is not necessary for us to decide whether or not the *mandamus* could have been sustained if the appeal had been taken from the order granting the same. That question is not before us. Nor is the question before us as to the merits of Duffy's claim.

The order appealed from, therefore, should be reversed.

1. As to the part which vacates Taylor's injunction; and

2. As to the part which orders the trustees of West Troy to order the payment of this money, or, in default, that an attachment issue against them; and

3. As to the chamberlain for the reasons stated by Judge BOARDMAN.

BOARDMAN, J.:

The chamberlain is but the agent or servant of the village. A judgment enjoining the defendant from paying Duffy is binding on the chamberlain, and excuses him as well as defend-

ant.  They are in law one and the same.  It would be wrong while the defendant is enjoined from paying Duffy to order or allow its financial officer to pay.  The same reasons which protect the village should equally protect the chamberlain.

The order should be reversed, with ten dollars costs and printing.

BOCKES, J.:

I am of opinion that the order should be reversed *in toto,* for the reasons above suggested by BOARDMAN, J.

Order reversed, with ten dollars costs and printing disbursements.